UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JILL SCHOONMAKER,

    Plaintiff,

v.

CITY OF EUREKA,

    Defendant.

Case No.17-cv-06749-VC (RMI)

**ORDER ON DISCOVERY MOTIONS**

Re: Dkt. Nos. 49, 51 & 52

Before the court are Defendant's Discovery Letter Brief (Doc. 49) regarding a protective order, Motion to Compel a Psychological Examination Under Rule 35 (Doc. 51), and Motion to Compel Additional Deposition Time (Doc. 52). The issues are fully briefed. For the reasons that follow, the court will deny the Discovery Letter Brief, reserve ruling on the Motion to Compel a Psychological Examination, and grant the Motion to Compel Additional Deposition Time.

*A. Protective Order*

Defendant requests that the following documents be covered by the parties' stipulated protective order: (1) Ms. Kramer's draft report of her investigation; (2) Ms. Kramer's final report regarding Mr. Bird (the "Bird report"); and (3) Ms. Kramer's recordings of her interviews with employee witnesses. Defendant asserts that "disclosure to the public of the draft report, the Bird report, and the employee interviews will result in a particularized harm. Specifically, it will cause undue embarrassment to Mr. Bird relating to the allegations and resulting investigation as to whether he failed to properly correct Ms. Schoonmaker's behavior." (Doc. 49) at 4. Further Defendant argues that:

> the interviews of City employees should be subject to a protective order because the persons interviewed were advised that they were expected to answer all questions truthfully and not to discuss their interviews with any other employees.

> They were informed that they were expected to comply with all requests for information. If the employees' interviews regarding allegations of workplace bullying or harassment are made available to the public, this may lead to employees being less honest or less willing to cooperate in future workplace investigations.

*Id*. Plaintiff counters that a protective order is not warranted as Defendant has failed to show a particularized harm and that the final report, which was previously disclosed, contains "summaries of the witnesses' statements who were named in the report." (Doc. 50) at 2. Moreover, Plaintiff argues that Defendant's generalized assertions of embarrassment to Mr. Bird "regarding allegations and a finding he failed to run his department and to correct any employees are [allegations] in the Plaintiff's complaint." *Id.*

The court agrees with Plaintiff. "*In re Roman Catholic Archbishop* explained that deciding whether to continue a protective order involves three steps or considerations: (1) 'whether the party seeking protection has shown particularized harm' from public disclosure, (2) 'whether the balance of public and private interests weighs in favor' of a protective order, and (3) 'whether redacting portions of the discovery material will nevertheless allow disclosure.'" *Armstrong v. Brown*, No. C 94-2307 CW, 2016 WL 4364444, at *1 (N.D. Cal. Aug. 16, 2016) (quoting *In re Roman Catholic Archbishop,* 661 F.3d 417, 425 (9th Cir. 2011). As to the particularized harm alleged by Defendant regarding Mr. Bird, "[n]umerous courts have held that mere embarrassment, without a demonstration that the embarrassment will be particularly serious or substantial, is not enough to demonstrate good cause for a protective order." *Garcia v. Chapman*, 2013 WL 12061867, at *9 (S.D. Fla. Oct. 22, 2013), report and recommendation adopted, 2013 WL 12061868 (S.D. Fla. Nov. 15, 2013) (citing *Flaherty v. Seroussi*, 209 F.R.D. 295, 299–300 (N.D.N.Y. 2001) ("To rise to the level of good cause, any such embarrassment must be substantial") (citation omitted); *Welsh v. City and County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("Mere embarrassment by the release of information is insufficient to constitute serious harm"); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order") (citation omitted); *Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990), superseded on other grounds by statute, Fed. R. Civ. P. 5(d) (amended 2000) ("The defendants have not demonstrated a substantial likelihood of serious embarrassment that

2

would constitute Rule 26(c) good cause") (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).

Regarding Defendant's concerns over the employees' interviews, Defendant does not state that the employees were told that the interviews would be confidential, only that the employees were expected to be truthful, to comply with requests for information, and not to discuss their interviews with any other employees. All three of these concerns (honesty, compliance, and discretion) are normal expectations for employees during human resource investigations. Defendant's general assertions of concern regarding these areas for possible future investigations fall short of the particularized harm requirement for a protective order.

Accordingly, Defendant's request that (1) Ms. Kramer's draft report of her investigation; (2) the Bird report; and (3) Ms. Kramer's recordings of her interviews with employee witnesses be covered by the stipulated protective order is DENIED.

### *B. Psychological Examination Under Rule 35*

This dispute concerns Defendant's request that the court compel Plaintiff to undergo an independent medical exam ("IME") under Federal Rule of Civil Procedure 35. In its Reply, Defendant states the following:

> If it is Plaintiff's position that she is only claiming "garden variety" emotional distress, and that the only basis for discrimination against her is the disclosure of her disability, then the CITY will forego her psychiatric examination and testing under the following conditions: (1) Plaintiff's allegations are limited to claims that the disability discrimination she faced was due solely to the disclosure of her disability, not that her termination was the result of or premised on the symptoms of her disability; (2) Plaintiff is not claiming any treatment costs for medical, counseling, or mental health services provided; (3) Plaintiff will not be introducing testimony or evidence from any mental health or medical provider; (4) Plaintiff's testimony regarding emotional distress will be limited to general testimony regarding her emotional distress, specifically "general complaints of temporary symptoms that any healthy, well-adjusted person" would likely feel as a result of losing their job (*See Jacobs v. Connecticut Cmty. Tech. Colleges, infra*, 258 F.R.D. 192, 195–96 (D. Conn. 2009)); and (5) She will not introduce any evidence or argument that she did, in fact, have any mental condition or disability, including but not limited to bipolar disorder, that caused the behavior which formed the basis for her termination.
>
> If Plaintiff does not agree to these limitations and she alleges that the behaviors for which she was terminated, as set forth in the Kramer report, were caused by her disability, or if she intends to testify to the extensive and severe emotional distress she alleges in her discovery responses and complaint, then the CITY is entitled to an IME to determine the veracity of these allegations.

3

(Doc. 57) at 2.

Because the court has reviewed the parties' briefings on this issue and finds Defendant's arguments well taken, the court will allow Plaintiff a chance to accept or at least consider and discuss Defendant's offer and will defer its ruling on this issue to a later date.

Accordingly, the parties shall meet and confer, by telephone if necessary, as to Defendant's offer and file a joint statement regarding the outcome of the discussions by no later than 12:00 p.m. on October 15, 2018.

### *C. Additional Deposition time*

Defendant seeks additional time to depose Plaintiff. Plaintiff was previously deposed for seven hours, but Defendant contends that it needs "additional time to depose Plaintiff regarding the contents of Karen Kramer's investigation report as well as Plaintiff's alleged damages." (Doc. 52) at 4. With regard to the report, Defendant points to the number of allegations about Plaintiff in the report, as well as the time period the report covers, and argues that "[b]ecause Plaintiff denies the allegations made about her, and which form the foundation for her termination, the CITY must be permitted the opportunity to explore each incident of inappropriate behavior referenced in the report." *Id*. Regarding damages, Defendant points to the "myriad emotional distress damages" claims made by Plaintiff and because Defendant did not timely receive certain discovery responses prior to the deposition related to damages, it was unable to fully depose Plaintiff. Plaintiff does not respond to Defendant's arguments regarding the issue of damages, rather Plaintiff asserts that Defendant had sufficient time to conduct the depositions and no further time should be allowed.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d). "A party seeking a court order to extend the examination must show 'good cause' to justify such an order." *Pratt v. Archstone Willow Glen Apartments*, No. C08-3588 JF (RS), 2009 WL 2032469, at *1 (N.D. Cal. July 10, 2009) (citing *Boston Scientific v. Cordis Corp.*, No. 5:02–CV–1474 JW (RS), 2004 WL 1945643, at *2

4

(N.D.Cal. Sept. 1, 2004)). "Considerations relevant to granting an extension include events occurring over a long period of time, the need fully to explore the theories upon which the witness relies, or, in multi-party cases, the need for each party to examine the witness with the understanding that duplicative questioning is to be avoided." *Id.* (citing *Saunders v. Knight, No.*, 2007 WL 38000, at *3 (E.D. Cal. Jan 4, 2007)). Based on the period of time covered in the report (2010-2017), the number of allegations in the report, Plaintiff's assertions that "so much of [the allegations in the report were] just so exaggerated or fictional," (Schoonmaker Depo. at 224:20, attached to Lowry Decl. as Exhibit B), as well as the timing of the discovery responses related to damages, the court finds good cause to extend the deposition beyond the 7 hours.

Because the parties may be able to resolve the scope of the damages alleged, *see supra*, additional deposition time may be unnecessary as to damages. Thus, the court will not yet determine the length of the additional deposition time. In addition, where and when the additional deposition takes place would be affected by the resolution of the Rule 35 motion. For example, whether Plaintiff could appear by video versus in-person and whether the deposition takes place after an IME (if ordered) are issues to be decided after the Rule 35 motion is decided.

Accordingly, Defendant's request for additional time for deposition of Plaintiff is GRANTED. The amount of time and the scope of the deposition will be determined after the parties meet and confer regarding the Rule 35 offer. The parties will also discuss this issue at the meet and confer and include a paragraph in the joint statement regarding timing, location, and duration of Plaintiff's deposition.

**IT IS SO ORDERED.**

Dated: October 9, 2018.

ROBERT M. ILLMAN
United States Magistrate Judge